**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

ANGELA LYNN AMOROSO,

             Plaintiff,

v.                                    CIVIL ACTION NO.: 5:19CV281
                                    (BAILEY)

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

# REPORT AND RECOMMENDATION

## I.    Introduction

This case arises from the denial of Plaintiff, Angela Lynn Amoroso's ("Plaintiff") application for Title II Disability Insurance Benefits ("DIB").   After Plaintiff's application proceeded through the administrative process, United States Administrative Law Judge, H. Munday ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act.   Plaintiff's request for review by Appeals Council was denied, making the ALJ's decision the final decision of Defendant.  Plaintiff seeks judicial review of Defendant's decision.[1]

The undersigned has considered the parties' briefs and the record on appeal.  The facts and legal arguments have been adequately presented.  Accordingly, the decisional process would not be significantly aided by oral argument. Therefore, the recommendations of the undersigned are set forth below.

---

[1] Plaintiff was represented by counsel during the underlying proceedings.  Plaintiff is currently proceeding *pro se*.

## II.     Factual/Procedural History

Plaintiff initially filed her application for disability benefits on or about September 8, 2015, which alleged disability beginning on August 1, 2014.  R. 20.  This claim was denied initially.  R. 20, 145-48.  Plaintiff appealed this denial, but the appeal was not determined before Plaintiff filed another application for disability benefits.  R. 20.  Plaintiff's subsequent application was denied initially and upon reconsideration.  R. 153-56, 158-61, 163-65, 167-69.  Plaintiff requested a hearing before an ALJ.  R. 170-71.  Said hearing occurred on February 21, 2019. R. 20-31, 38-68, 207-212.  During the February 21, 2019 hearing, Plaintiff by and through her attorney, moved to formally amend her initial application to include the impairments raised in her subsequent application: back injury, depression, anxiety, hiatal hernia, migraines, hypertension, kidney issues, endometriosis.  R. 20, 42-43, 247-253, 254-270, 295-304, 320-331.[2]  The two applications were consolidated, and Plaintiff's alleged onset date was amended from August 1, 2014 to January 13, 2017.  R. 20.

Following the hearing, the ALJ issued an Unfavorable Decision, finding that Plaintiff is not disabled within the meaning of the Social Security Act.  R. 20-31.  Plaintiff requested review of this decision, but her request was denied by the Appeals Council.  R. 1-6.  This appeal followed.

Plaintiff filed her Complaint on September 30, 2019.  ECF No. 1.  Defendant filed its Answer on January 28, 2020.[3]  ECF No. 14.  On the same date, Defendant filed a certified copy of the Social Security Administrative Record.  ECF No. 15.  After seeking and obtaining multiple extensions of time within which to file her Motion, Plaintiff filed her Motion for Summary

---

[2] Plaintiff had previously filed another an application for benefits, but the same was denied by ALJ hearing decision issued May 2013. R. 69-87.
[3] Though she filed her Complaint on September 30, 2019, Plaintiff did not file a Motion for Leave to Proceed *In Forma Pauperis* until November 7, 2019.  Said Motion was granted on November 25, 2019 and summonses were issued the same day.

Judgment on July 20, 2020.[4]  ECF No. 32.  Defendant filed its Motion for Summary Judgment and Memorandum in Support on August 19, 2020.

## III.    ALJ Decision

### A.  The Five-Step Evaluation Process

In determining whether Plaintiff is disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520.  The first step in the process is to determine whether a claimant is currently engaged in substantial gainful activity.  § 404.1520(b).  If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe.   § 404.1520(c).  If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  § 404.1520(d).  If impairment meets or equals a listed impairment, the claimant is disabled.  *Id.*  However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity (hereinafter "RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of his impairments.  § 404.1520(e).  After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of his past relevant work.  § 404.1520(f).  If the claimant does not have the RFC to do his past relevant work, then he has established a *prima facie* case of disability, and the burden

---

[4] The final extension of time permitted Plaintiff until July 15, 2020 to file her Motion.  ECF No. 30.  Defendant is correct in that Plaintiff's Motion was ultimately filed approximately five (5) days beyond the set deadline.  However, in light of Plaintiff's *pro se* status, and given the complexity of the Administrative Record and issues on appeal, the undersigned has considered Plaintiff's arguments on the merits.

3

shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's age, education, and work experiences.  § 404.1520(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983).

### B.  ALJ Findings

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2019.  R. 22.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 13, 2017, the alleged (amended) onset date.  R. 22.  At step two, the ALJ determined that Plaintiff has the following severe impairments: a back impairment (lumbago/sciatica status post-surgery and post laminectomy syndrome); hypertension; a history of obesity; migraines; depression; and anxiety.  R. 23.  However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  R. 23.

The ALJ next determined that Plaintiff has the following residual functional capacity:

to perform light work, as defined in 20 CFR 404.1567(b), except with standing/walking a total of four hours in an 8-hour workday; sitting for one hour at a time, standing 30 minutes at a time and after that duration would walk at or near workstation 1-2 minutes before resuming sitting or standing; occasional balancing, stooping, kneeling, crouching and climbing ramps/stairs; never crawling and climbing ladders, ropes and scaffolds; occasional push and pull activities with the left lower extremity; occasional exposure to vibrations; moderate noise exposure (defined in SCO as a business office with typewriters in use; department store; grocery store, light traffic and fast food restaurant at off-hours); no exposure to hazardous conditions, including unprotected heights and moving machinery; only simple work-related decisions with few workplace changes; no work at a fixed production rate pace; and frequent interaction with the general public.

R. 25.  The ALJ concluded that Plaintiff is unable to perform any past relevant work.  R. 29-30. Considering the claimant's age (which is considered to be "younger"), education, work experience,

and residual functional capacity, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform.  Accordingly, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act.  R. 30-31.

## IV.    Motions for Summary Judgment

### A.    The Standards

#### 1.    Summary Judgment

Summary Judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  All inferences must be viewed in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but…must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

#### 2.    Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence."  42 U.S.C. § § 405(g), 1383(c)(3).  "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  "Substantial evidence" is not a "large or considerable amount of evidence, but rather, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988)

(internal citations and quotations omitted).  The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence."  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations and quotations omitted).  The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. § § 405(g), 1383(c)(3).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence'."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966), *overruled by implication on other grounds by Black and Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

Keeping these standards in mind, the undersigned will discuss the arguments raised on appeal.

### B.    Arguments of the Parties

#### 1.    Plaintiff's Arguments[5]

Plaintiff raises the following arguments on appeal: (1) the ALJ erred when he concluded that certain of her impairments are non-severe; (2) the ALJ erred when he found that certain of Plaintiff's impairments do not meet or exceed one or more of the Listings; (3) substantial evidence does not support the ALJ's RFC finding; (4) Plaintiff did not receive sufficient representation during the ALJ hearing; (5) the District Court should review and consider the records appended to Plaintiff's Motion in determining the instant appeal.

#### 2.    Defendant's Arguments

Defendant contends that substantial evidence supports the ALJ's finding that Plaintiff's impairments are not presumptively disabling at step three of the sequential evaluation process.

---

[5] In accordance with the prevailing case law, in light of Plaintiff's *pro se* status, the undersigned has liberally construed Plaintiff's Complaint.  *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Defendant further argues that the ALJ's RFC credibly captured all of Plaintiff's established limitations.  Additionally, Defendant argues that Plaintiff's complaints about her counsel do not establish a basis for remand.  Finally, Defendant contends that the records appended to Plaintiff's Motion are already contained within the record or are not appropriately considered by the Court.

### C.    Discussion

#### 1.    ALJ's Finding of Non-Severe Impairments

Plaintiff first argues that the ALJ's finding that certain of her impairments are non-severe, is incorrect.  Plaintiff contends that the impairments labeled "non-severe" by the ALJ were not taken seriously and were not sufficiently reviewed to determine how those impairments affect Plaintiff's life and working ability.  A review of the Administrative Record in conjunction with the ALJ's decision, however, reveals that substantial evidence supports the ALJ's findings.

In his memorandum decision, the ALJ found the following impairments to be non-severe: endometriosis, hiatal hernia, kidney stones, left knee injury, and carpal tunnel syndrome.  The ALJ explained his decision thusly:

> [t]he undersigned finds all other impairments alleged in the record to be non-severe, including the claimant's history of endometriosis status post a laparoscopy, hiatal hernia, kidney stones status post surgery in April 2018, history of left knee surgery and history of carpal tunnel syndrome status post surgery because they have been responsive to medication/treatment, have not required significant medical treatment and have not resulted in any continuous exertional or non-exertional functional limitations.

R. 23.  The ALJ cites to the following portions of the record: R. 408-21; 516-20; 612-28; and 721-770.  The medical records cited support the ALJ's findings.

To be considered a severe impairment, that impairment(s) must result in the significant limitation of a plaintiff's ability to perform basic work activities.  *See* 20 C.F.R. § 404.1520(c) ("[y]ou must have a severe impairment….[i]f you do not have any impairment or combination of

impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled"). Nothing in the evidence of record supports the conclusion that the aforementioned impairments have resulted in a significant limitation in Plaintiff's ability to perform basic work activities. Indeed, after reviewing and considering those records upon which the ALJ relied in making his findings, it is clear that substantial evidence supports his findings. In most if not all of these records, there is little to no mention of Plaintiff's endometriosis, hiatal hernia, kidney stones, her left knee injury/ailment, or her carpal tunnel syndrome. In the records where these ailments are mentioned, they are most typically mentioned to document Plaintiff's past medical history rather than any ongoing, continuous, consistent treatment. Consequently, there is nothing within these records which would support the conclusion that any of these impairments, either singly or in combination, has resulted in significant limitation of Plaintiff's ability to perform basic work activities.

Notwithstanding the above, and out of an abundance of caution, the undersigned did not simply limit review to those records upon which the ALJ relied. Rather, the undersigned also reviewed and considered the records cited by Plaintiff in her Prehearing Memorandum in Support of a Favorable Decision. *See* R. 402-404. These records similarly did not reveal any evidence of significant limitation of Plaintiff's ability to perform basic work activities as a result of the aforementioned impairments. Rather, and as the ALJ noted, the evidence demonstrates that these impairments were responsive to medication and/or treatment, which was not significant in nature. Therefore, substantial evidence supports the ALJ's findings that Plaintiff's endometriosis, hiatal hernia, kidney stones, left knee injury, and carpal tunnel syndrome are not severe impairments.

### 2.   ALJ's Finding at Step Three – that Plaintiff's impairments do not meet or exceed any of the Listing Impairments

Plaintiff next contends that the ALJ erred when he found that certain of Plaintiff's impairments do not meet or exceed any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  According to the ALJ's decision, Plaintiff suffers from the following severe impairments:  (1) a back impairment, (2) hypertension, (3) obesity, (4) migraines, (5) depression, and (6) anxiety.  R. 23.[6]  The ALJ found, however, that none of these impairments qualifies as a Listing Impairment.  For the reasons that follow, the undersigned would similarly conclude that substantial evidence supports the ALJ's findings.

"The Listing of Impairments (the listings)…in appendix 1…describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525.  An impairment is "medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404.1526.  The ALJ evaluated Plaintiff's impairments pursuant to the following Listings: 1.04 – Disorders of the Spine; 4.00 – Cardiovascular disorders (hypertension); 11.01 – Neurological Disorders (migraines); 12.04 – Depressive, Bipolar, and related disorders (depression); and 12.06 – Anxiety and Obsessive -Compulsive Disorders (depression/anxiety).  Of these, Plaintiff appears to have challenged the ALJ's findings vis-à-vis the following: 1.04; 11.01; 12.04; and 12.06.  The undersigned will address each in turn.

---

[6] According to Plaintiff's brief, she believes that she suffers from the following severe impairments: low back impairment; pain; and depression.  Because the ALJ's list of Plaintiff's severe impairments includes more impairments that those Plaintiff has attributed to herself, the undersigned will consider those severe impairments contained in the ALJ's decision for purposes of considering this appeal.

### a.   1.04 – Disorders of the spine

To qualify for this Listing, the evidence must demonstrate that Plaintiff suffers from herniated discs, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture.  Additionally, the disorder of the spine must result in a compromise of a nerve root (including the cauda equina) or the spinal cord with one of the following: (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or (2) spinal arachnoiditis, confirmed by operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe or burning or painful dysesthesia, resulting in the need for changes in posture more than one every 2 hours; or (3) lumbar spinal stenosis resulting in pseudo-claudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

The undersigned would note that Plaintiff bears the burden for steps one, two, three, and four.  Specifically, at step three, Plaintiff must show that she qualifies under one of the Listings by a preponderance of the evidence.  *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287 (1987).  A review of Plaintiff's brief reveals, however, that Plaintiff has not supported her argument that she qualifies under Listing 1.04 with a showing of evidence.  That is, Plaintiff has not cited to any evidence of record which would tend to demonstrate that Plaintiff's impairments qualify under Listing 1.04.  For this reason, the undersigned would conclude that Plaintiff has not satisfied her burden and therefore her arguments on this point are without merit.

Notwithstanding the above, and out of an abundance of caution, the undersigned reviewed the evidence of record with respect to the issue of whether Plaintiff qualifies under Listing 1.04, and specifically that evidence cited within the ALJ's decision. *See* R. 23-24. *See also* 521-582; 612-651; 658-770; and, 791-1100. After doing so, the undersigned is satisfied that Plaintiff's argument is without merit, and that the ALJ's decision is supported by substantial evidence.

In his decision, the ALJ found that Plaintiff did not qualify for this Listing because, among other things, Plaintiff's imaging studies did not demonstrate compromise of a nerve root. The ALJ also indicated that there was no positive straight leg raising in both the sitting and standing positions, and Plaintiff demonstrated a generally normal gait and did not use an assistive device. These observations are correct. Indeed, the multiple imaging studies (MRI and x-ray) conducted on Plaintiff, as documented in the above-noted medical records, did not reveal the compromise of a nerve root. Further, none of the medical records which evaluated and analyzed these imaging studies opined compromise of a nerve root. While it was noted that Plaintiff had a positive straight leg raising test on the left, the ALJ is correct that it was not noted whether this positive test was present in both the sitting and supine positions.

Additionally, the medical evidence of record shows that Plaintiff generally demonstrated a normal gait. There is mention in the medical records of Plaintiff demonstrating an antalgic gait; however, this note occurs only intermittently in all of the aforementioned records, and for the majority of the time normal gait is noted. There is no mention of Plaintiff ambulating with an assistive device, nor is there a recommendation that Plaintiff obtain or use one. Finally, the undersigned would note that there is no finding that Plaintiff suffers from motor loss or muscle atrophy, and there is no evidence that Plaintiff suffers from spinal arachnoiditis.

Accordingly, and for all of these reasons, the undersigned would conclude that substantial evidence exists to support the ALJ's finding that Plaintiff's impairments do not qualify under 1.04 of the Listings.

### b.   11.01 – Neurological Disorders

Plaintiff next argues that her impairments qualified under Listing 11.01. The ALJ considered Plaintiff's severe impairment of migraines under this Listing. A review of the medical evidence of record, however, reveals absolutely no evidence to support a conclusion that Plaintiff's migraines qualify under Listing 11.01. To qualify under Listing 11.01, the evidence must show that Plaintiff's migraines cause limitations in physical and mental functioning. *See* 20 C.F.R. pt. 404, subpt. P., app. 1, § 11.00 (11.01). There is no evidence in the Administrative Record that would support a conclusion that Plaintiff's migraines cause limitations in physical and mental functioning. Substantial evidence therefore supports the ALJ's finding on this point.

### c.   12.00 - Mental Disorders (12.04 and 12.06)

Plaintiff next contends that evidence of her mental disorders was "not adequately considered." ECF No. 32, pg. 2. This argument is not persuasive, however. A review of the ALJ's opinion demonstrates that Plaintiff's mental disorders and the evidence concerning the same were thoroughly considered by the ALJ. Importantly, the ALJ considered not only the medical evidence of record, but also Plaintiff's subjective claims and complaints. R. 23-25; 27-29; 36-68; 332-352; 521-537; and 596-604.

Moreover, and to the extent Plaintiff argues that substantial evidence does not support the ALJ's conclusion that Plaintiff's impairments do not qualify under Listings 12.04 and 12.06, this argument is similarly not persuasive. Rather, substantial evidence supports the ALJ's findings. As stated in his opinion, the ALJ considered whether "Paragraph B" criteria were satisfied. To

12

satisfy Paragraph B criteria, the evidence must demonstrate that Plaintiff's mental impairments result in at least one extreme or two marked limitations in a broad area of functioning, which include: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A 'marked' limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.  An 'extreme' limitation is demonstrated by the inability to function independently, appropriately, or effectively, and on a sustained basis.  *See* R. 597-603. 20 C.F.R.  pt. 404, subpt. P., app. 1, § 12.00 (12.04 and 12.06).

As the ALJ correctly noted, Plaintiff's depressive disorder and anxiety were initially controlled by her primary care provider and conservative treatment, i.e. medication.  R. 353, 516-520.  In September 2018, Plaintiff sought treatment with Potomac Highlands Guild, which treatment again included conservative measures such as medication.  Plaintiff appears to have responded to this conservative treatment.  R. 1101-1150.  Of note, when Plaintiff was evaluated at Potomac Highlands Guild, she demonstrated no suicidal/homicidal hallucinations; good insight; she was oriented to person, place, date/time, and situation; she demonstrated good judgment; remote memory; recent memory; and immediate memory.  Additionally, her motor activity was noted to be within normal limits, and she demonstrated appropriate affect.  *Id.*  While it was noted that Plaintiff demonstrated deficient skills for mental status coping ability, there is no indication that this deficiency could be considered an 'extreme' or a 'marked' limitation as required by the Listings.  *Id.  See also* R. 596-604.

### 3.    Plaintiff's Residual Functioning Capacity

Plaintiff next argues that substantial evidence does not support the ALJ's finding regarding Plaintiff's RFC.  In particular, it appears that Plaintiff takes issue with the portion of the ALJ's

RFC finding that "the totality of the evidence fails to substantiate that [Plaintiff's] limitations are of the degree and intensity alleged, and that they are of a nature to preclude her from performing basic work activities, at least at the limited light exertional level." R. 28. Instead, Plaintiff contends that her RFC is "almost non-existent due to [her] limitations and restrictions." ECF No. 32, p. 2.[7] A review of the evidence of record, however, does not support Plaintiff's averments. Rather, the record demonstrates that substantial evidence supports the ALJ's RFC finding, as implicated.

As was stated previously, the medical record reveals that Plaintiff has undergone mostly conservative management of her impairments.[8] Additionally, many of Plaintiff's objective physical examinations have demonstrated a normal station and gait, full muscle strength, intact sensation, normal reflexes, full range of motion, and negative straight leg raising test. For those exams that have demonstrated any limitations in range of motion or a positive straight leg raise test, there is no indication that these observations would support the conclusion that Plaintiff urges this Court to reach – that her RFC is 'non-existent.' R. 589-90, 619, 683, 689, 732-33, 761, 777, 793-94, 800, 850-51, 898, 937, 947-48, 974, 985, 1001-02, 1012, 1019-20, 1025-26, 1031-32, 1043, 1052, 1061, 1080, 1098, 1129, 1143-44, 1146-47, 1149.

The medical evidence regarding Plaintiff's mental health treatment similarly does not support Plaintiff's claims regarding severity, intensity, and persistence. Until approximately 2018, Plaintiff treated with her primary care physician for her depression and anxiety, which appeared controlled through conservative measures (i.e. medication). In approximately 2018, Plaintiff sought treatment at Potomac Highland Mental Health Guild, which treatment also consisted of

---

[7] Plaintiff has provided a detailed account of her current, alleged symptoms at p. 8 of her brief.
[8] Plaintiff underwent a laminectomy in 2015 and has been treated with several epidural steroid injections. R. 437, 458-461.

14

conservative measures (i.e. medication).  The medical evidence further demonstrates that, upon examination, Plaintiff typically displayed normal affect, eye contact, behavior, memory, thought content, concentration, insight, judgment, and speech.  R. 600-03, 777, 793-94, 1012, 1043, 1052, 1061, 1080, 1098, 1104-05, 1109, 1112-13, 1129, 1143-44, 1146-47, 1149.  Plaintiff also reported that her symptoms improved with medication.  R. 1102-1150.

Notwithstanding the above, the undersigned would note that the ALJ appears to have made accommodations within the RFC for Plaintiff's complaints of back pain and impairment by restricting Plaintiff's ability to perform job functions beyond those which were recommended by the medical experts.  R. 28.   The ALJ also further limited Plaintiff's RFC beyond the recommendations of the medical experts with respect to Plaintiff's history of migraines, and provided that Plaintiff should have only a moderate noise exposure.  R. 29.  Finally, the ALJ limited Plaintiff's RFC to only 'frequent' interaction with the general public in light of Plaintiff's depression and anxiety.  R. 29.  In so doing, it would seem that the ALJ did not simply discount Plaintiff's testimony concerning the severity of her symptoms.  Rather, he took her contentions into consideration and made accommodations for them in the RFC.  Accordingly, the undersigned would conclude that substantial evidence supports the ALJ's RFC finding.

### 4.      Alleged Inadequate Assistance of Counsel

Plaintiff argues that she retained Jan Dils, Esq. to represent her during the proceedings below, but that Ms. Dils was not the attorney that represented Plaintiff during the Administrative Hearing.  Rather, another attorney appeared on Plaintiff's behalf at the Administrative Hearing - an attorney who, according to Plaintiff, was unfamiliar with Plaintiff or her case.  As a result, Plaintiff believes that she was not adequately represented during the underlying proceedings.  This argument, however, is also without merit.

A plaintiff prosecuting a claim for social security benefits may be represented by an attorney during administrative proceedings. However, a social security claimant is not guaranteed representation by counsel during said proceedings. Consequently, there is no ineffective assistance of counsel claim in an appeal for social security benefits. *Scott v. Berryhill*, 5:18-cv-158, 2019 WL 6694726, at *25 (N.D.W.Va. July 30, 2019), report and recommendation adopted sub nom. *Scott v. Comm'r of Soc. Sec.*, 5:18-cv-158, 2019 WL 3937635 (N.D.W.Va. Aug. 20, 2019). *See Cornett v. Astrue*, 261 Fed.Appx. 644, 651 (5th Cir. 2008) (explaining that the Supreme Court has never recognized a constitutional right to counsel in Social Security proceedings); *see also Behnke v. Colvin*, 2:14-cv-00012, 2015 WL 2151786, at *12 (W.D. Va. May 7, 2015) (noting that when the claimant is represented by counsel, the ALJ has a right to assume that counsel is presenting the claimant's strongest case for benefits). Therefore, there is no authority for this Court to remand Plaintiff's case to the ALJ for further proceedings on this issue.

### 5.     Additional Evidence

Finally, Plaintiff has submitted additional evidence with her brief. However, and for the reasons stated in Defendant's brief [ECF No. 37, p. 18-19], the undersigned would conclude that these records do not provide a basis upon which to remand this matter for additional consideration.

## V.   Recommendation

 Substantial evidence supports the ALJ's findings and conclusions. Accordingly, and for all of the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion [32] for Summary Judgment be **DENIED** and Defendant's Motion [36] for Summary Judgment be **GRANTED**.

Any party who appears *pro* se and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Wright v. Collins*, 766 F.2d 841, 845-48 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985).

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.   The Court further **DIRECTS** the Clerk to mail a copy of this Report and Recommendation to any pro se party by certified mail, return receipt requested, to their last known address as reflected on the docket sheet.

Respectfully submitted this 24th day of  November 2020.


/s/ James P. Mazzone
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE

17